**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **RAYMOND WALTON,** <br><br> **Plaintiff,** <br><br> **vs.** <br><br> **ZACHARY POWELL,** <br> **ANDREW STORY,** <br> **C/O KORANDO,** <br> **C/O SMITH**[1], <br> **C/O EVANS,** <br> **SGT. MADEYLIN**[2], <br> **C/O GARNETT,** <br> **C/O HARRISON**[3], <br><br> **Defendants.** | ) | **Case No. 26-cv-1144-RJD** |

# MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Raymond Walton, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint (Doc. 1), Walton alleges that Defendants violated his rights by denying him adequate bedding, using excessive force against him, and conducting a strip search in a harassing manner. This case is now before the Court for

[1] The Clerk of Court is **DIRECTED** to **ADD** Defendant Smith to the case caption in CM/ECF as Defendant Smith is properly named on page 1 of the complaint in the caption.
[2] The Clerk of Court is **DIRECTED** to update the spelling of Defendant "Madeylin" to "Mogdlin." On the first page of the complaint and in the factual allegations (Doc. 1 at p. 7) the name is clearly printed "Mogdlin".
[3] In the written-out listing of defendants that spans pages 2-3 of the complaint, Walton listed a "Defendant Harrison," but this individual was not named in the case caption, and no allegations were made against this person in the factual narrative. Accordingly, Defendant Harrison is dismissed without prejudice for Walton's failure to state a claim.

preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[4] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Walton alleges that on January 22, 2025, he was placed in a cell where the mattress was soaked with OC spray (Doc. 1 at 6). He claims he informed Defendant Powell of the mattress and his sensitivity as someone with asthma and epilepsy. Powell retrieved another mattress but placed it outside of the cell door where it was inaccessible. A few moments later Powell returned with Defendant Smith and indicated that Walton was being moved to another cell. Walton turned to the back of the cell and held his hands up. Walton alleges that Powell then told Smith that Walton had just spit on him, and Powell excessively sprayed him with OC spray on the back of his head, neck, and back. (*Id.*at 6-7). Walton remained facing the back of the cell with his hands up.

Defendant Story arrived and demanded that Walton cuff up. Walton attempted to turn around to show Story that there was no OC spray on the front side of his body, but Story brandished a large can of OC spray, so Walton turned around and submitted to the handcuffs. Walton was then escorted to the medical unit where he asked to see a nurse for his asthma pump, but Defendant Evans waved the nurse off. (*Id.* at 7).

Story then indicated he was going to perform a public strip search, which Walton opposed as unethical, but Story persisted. Walton alleges that Defendants Smith, Garnett, Korando, Evans,

[4] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections to the exercise of Magistrate Judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the Illinois Department of Corrections.

and Modglin filed into the holding cage and surrounded him. (*Id.* at 7-8). Story then commanded him to strip naked, and Story sprayed Walton's hands with OC spray. Story directed Walton to turn around and spread his butt cheeks, and Story then commanded Walton to separate his genitals. Walton alleges that every officer laughed during this encounter. Walton was then locked in the cage burning from the effects of OC spray. He asked for clothing and was provided with his OC-soaked shirt and underwear but was refused a jumpsuit. Walton was handcuffed and paraded into a cell in his underclothes in front of many inmates. He alleges the new cell lacked a bed, sheets, blankets, and cold water. Walton asked for bedding and a bed roll, but officers refused. He alleges that the lights were turned on outside of his cell and could not be powered off. He was forced to sleep on a metal bunk. (*Id.* at 8). Walton seeks monetary damages. (*Id.* at 9).

The Court designates the following claims related to Walton's allegations:

**Count 1:** **Eighth Amendment excessive force claim against Defendant Powell for his allegedly unprovoked use of OC spray on January 22, 2025;**

**Count 2:** **Eighth Amendment excessive force or cruel and unusual punishment claim against Defendant Story for applying OC spray to Walton's hands and then forcing him to perform a strip search in open view;**

**Count 3:** **Eighth Amendment failure to intervene claim against Defendants Smith, Garnett, Korando, Evans, and Modglin who allegedly stood by during the conduct described in Counts 1 and 2.**

(Doc. 1 at 5-6). The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[5]

[5] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

## Preliminary dismissals

To the extent that Walton complains about his conditions of confinement, initially having an OC spray-soaked mattress on January 22, 2025, and later sleeping on a metal bunk with the lights on, he does not provide enough information about these circumstances to proceed against any of the named defendants for at least two reasons. To establish a conditions of confinement claim, an inmate must establish (1) a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), *citing Farmer v. Brennan*, 511 U.S. 825, 824 (1994). Conditions may be considered collectively when analyzing a conditions of confinement claim, and the duration of the allegedly harmful conditions is relevant to the existence of an Eighth Amendment violation. *Id.* Adequate bedding is a condition of confinement that can support an Eighth Amendment claim, but Walton has not said anything about how long he experienced the lack of a mattress. Was it just a single night, or was it longer? Additionally, Walton does not say which defendant(s) placed him in the cell, who he immediately asked for a mattress, or any other employees he may have asked before the end of the night. As pled, Walton's conditions of confinement assertions are too vague to proceed.

Walton also mentions that at the medical unit he asked to see a nurse for his asthma inhaler, but Defendant Evans waved the nurse off. Though Walton alleges that the OC spray made it difficult for him to breathe, he does not say what Evans knew or observed about this, or if Evans realized he was asthmatic. A brief passing encounter seeking medical care in the presence of a corrections officer is not enough to state an Eighth Amendment claim for deliberate indifference absent more information about the interaction.

## DISCUSSION

**Claim 1: Excessive force by Defendant Powell**

An Eighth Amendment excessive force claim requires an inquiry into "whether force was applied in a good-faith effort to maintain or restore discipline, or [whether it was] applied maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The "core judicial inquiry" for an excessive force claim is not the severity of the injury, but whether the force used was 'malicious and sadistic.' *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Walton alleges that Powell sprayed him without provocation when he was complying with orders. Taken at face value, this assertion supports a claim of excessive force, so Claim 1 may proceed.

**Count 2: Strip search by Defendant Story**

To the extent that Walton alleges excessive force by Story for the application of pepper spray to Walton's hands, this theory of the claim may proceed at this preliminary juncture, though the theory described next may ultimately be a better fit for the facts of this case.

"There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). Strip searches are generally permissible in the prison context if conducted for a legitimate penological reason. *See id.* However, a strip search will violate the Eighth Amendment if it is "totally without penological justification" or "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Id.; see also Mays v. Springborn*, 575 F.3d 643, 649-50 (7th Cir. 2009) (strip searches done in view of other inmates, in a cold room, by guards who did not regularly change latex gloves, and who sometimes made demeaning comments, were sufficient to proceed to a jury trial). Walton plausibly alleges that the strip search was done in a manner intended to humiliate and inflict

psychological pain, and that the search also caused him physical pain due to the OC spray on his hands. Thus, Claim 2 may proceed against Story on the alternate theories of excessive force under the Eighth Amendment or cruel and unusual punishment for the manner of the strip search under the Eighth Amendment.

**Claim 3: Failure to intervene**

An official can be held liable under § 1983 for failing to intervene to prevent other officials' harm when: (1) a constitutional violation occurred, (2) the official observed that violation or had reason to know that violation occurred, and (3) the official "had a realistic opportunity to intervene to prevent the harm from occurring." *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (citing *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994)); *see also Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (noting longstanding recognition of "'failure to intervene' basis for a constitutional violation under the Eighth Amendment"). Recently, the Seventh Circuit reaffirmed the principle that officers can be held responsible for failing to intervene in misconduct by employees when they knowingly stand by. *See Smith v. Price*, 188 F.4th 988, 998-1000 (7th Cir. 2026) (finding that an inmate adequately alleged a failure to intervene claim against an officer who rode in the transport van with a second officer that refused to put a seatbelt on the inmate as the second officer drove erratically). Walton alleges that Smith, Garnett, Korando, Evans, and Modglin stood in a circle around him watching and laughing as Story performed the search and they did nothing to intervene. This is enough to proceed at this preliminary stage. Additionally, Walton alleges that Smith stood by when Powell sprayed him with OC spray for no reason. This theory may also proceed against Smith.

## Motion for Recruitment of Counsel

Walton has filed a Motion for Recruitment of Counsel wherein he merely indicates he has contacted attorneys but has not gotten any response (Doc. 3 at 1). When confronted with a request under § 1915(e)(1) for recruited counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007). The first inquiry "requires the indigent litigant to reasonably attempt to get a lawyer." *Thomas v. Wardell*, 951 F.3d 854, 859 (7th Cir. 2020). Determining whether a plaintiff has made reasonable efforts to recruit counsel himself "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (citations omitted). Walton provided no proof of his efforts beyond his statement that he sent letters to law firms. The Court generally requires proof of at least three attempts, which can be demonstrated via returned letters or postage receipts for mailing the letters. Additionally, Walton has not given any explanation of why he believes he needs the assistance of counsel. Without more information, Walton's motion is denied without prejudice as unsupported.

## Disposition

**IT IS HEREBY ORDERED THAT Claims 1-3** of the Complaint (Doc. 1) survive against Defendants Powell, Story, Korando, Smith, Evans, Garnett, and Modglin. The Clerk of Court shall **ADD** Defendant Smith to the CM/ECF docket sheet as explained by footnote 1. The Clerk of Court shall **UPDATE** "Madeylin" to Defendant "Modglin" consistent with footnote 2. The Clerk of Court shall **TERMINATE** Defendant Harrison for the reasons explained in footnote 3.

The Clerk of Court is **DIRECTED** to prepare for Defendants Powell, Story, Smith, Garnett, Korando, Evans, and Modglin: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his

whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

Walton's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** without prejudice.

**IT IS SO ORDERED.**

**Dated: November 2, 2026**

**REONA J. DALY**
**United States Magistrate Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel have filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed as a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by preponderance of evidence that the facts alleged occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.